UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| THOMAS FITZGIBBONS,<br><br>       Plaintiff,<br><br>    -against-<br><br>COUNTY OF TOMPKINS; TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES; KIT KEPHART, in her official and individual capacity as Commissioner of Tompkins Department of Social Services; DOUG PERINE, in his official and individual capacity as Senior Fraud Investigator,<br><br>       Defendants. | **COMPLAINT**<br><br>**ECF CASE**<br><br>21 Civ. __**3:21-cv-01019 (MAD/ML)**__<br><br>**JURY TRIAL DEMANDED** |

Plaintiff THOMAS FITZGIBBONS, by his attorneys, Law Offices of Andrea Moss, as and for his Complaint against Defendants, respectfully alleges as follows:

**PRELIMINARY STATEMENT**

1. Plaintiff Fitzgibbons brings this action seeking monetary and equitable relief based upon Defendants' violations of 42 U.S.C. Section 1983 based on the First Amendment for engaging in protected speech about public safety concerns; New York State Civil Service Law 75-b (hereinafter "CLS § 75-b") for reporting improper governmental conduct; for violations of the Age Discrimination in Employment Act of 1967 ("ADEA") and the New York State Human Rights Law ("NYSHRL") based on discrimination and retaliation, based on his employment as a

1

security officer by Defendant Tompkins County Department of Social Services in Ithaca, New York.

2.    Plaintiff seeks economic, compensatory damages and punitive damages to the extent allowable by law, and other appropriate legal and equitable relief pursuant to federal and state law.

## JURISDICTION AND VENUE

3.    This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1331 as this matter involves federal questions.

4.    This action's venue properly lies in the United States District Court for the Northern District of New York, pursuant to 28 U.S.C. § 1391, because the headquarters of the Tompkins Department of Social Services is located at 320 W. State Street, Ithaca, NY 14850, which lies in the jurisdiction of the Northern District of New York.

5.    This Court has the power to issue declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

6.    This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

## PARTIES

7.    Plaintiff THOMAS FITZGIBBONS is a resident of the County of Tompkins and the State of New York.

8.    At all times relevant herein, Mr. Fitzgibbons was a security officer and "public employee" employed by Defendant Tompkins County Department of Social Services within the meaning of New York State Civil Service Law § 75-b(1)(b).

9. At all times relevant herein, Defendant COUNTY OF TOMPKINS is a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

10. At all times relevant herein, Defendant TOMPKINS COUNTY DEPARTMENT OF SOCIAL SERVICES is an agency of Tompkins County and a "public employer" within the meaning of New York State Civil Service Law § 75-b(1)(a).

11. At all times relevant herein, Defendant KIT KEPHART was the Commissioner of the Department of Social Services employed by the County. Upon information and belief, Ms. Kephart currently holds said position and acted as a supervisor of Mr. Fitzgibbons. She is sued in both her official and individual capacity.

12. At all times relevant herein, Defendant DOUG PERINE was the Director of Operations and Senior Fraud Investigator and Mr. Fitzgibbons' direct supervisor. Upon information and belief, Mr. Perine currently holds said position. He is sued in both his official and individual capacity.

## STATEMENT OF FACTS

13. Mr. Fitzgibbons has been employed as a security officer with the Tompkins County Department of Social Services in Ithaca, New York since July 2014.

14. At all times relevant, his direct supervisor was Doug Perine ("Mr. Perine"), Director of Operations, and senior fraud investigator.

15. Mr. Fitzgibbons ordinarily worked 5 days a week, 35 hours a week, from 8:30 am - 4:30 pm, with a one hour lunch break. He originally worked 7:30 am-3:30 pm, but his shift was involuntarily changed by Defendant Perine on May 22, 2020, after he returned from a FMLA approved leave.

16. Mr. Fitzgibbons is presently 60 years old. His security coworkers Tyler Mix and Jennifer Vicedomini are significantly younger than Mr. Fitzgibbons, in their 30's or early 40's.

17. In December 2018, Mr. Fitzgibbons took an approved leave of absence for a few weeks to have back surgery which included the fusion of two vertebrae.

18. After he returned to work after his medical leave, on or about January 15, 2019, his supervisor Doug Perine gave him a counseling letter for incidents which had allegedly occurred on January 4, 2019, and January 9, 2019. These counseling letters required Mr. Fitzgibbons to attend training in Syracuse, New York, on or about May 22, 2019. He was the only individual security officer issued said counseling letter by Mr. Perine. No other similarly situated younger employee was required to attend this training in Syracuse.

19. At a July 24, 2019 meeting, Mr. Fitzgibbons verbally raised concerns to Deputy Commissioner Deana Bodnar about his supervisor Perine's sexual harassment and/or inappropriate behavior in the workplace. Mr. Perine was present at this meeting when Mr. Fitzgibbons raised these concerns with Ms. Bodnar. The behavior Mr. Fitzgibbons reported to Ms. Bodnar about Mr. Perine was his flirtatious and discomforting comments made to female coworkers regarding their bodies, references to his subordinates as "chin-nuts", and Mr. Perine instructing Mr. Fitzgibbons *not* to write a report outlining the details of a physical altercation between two patrons which had occurred within the past few weeks. Mr. Fitzgibbons never heard anything further about an investigation regarding his report to Ms. Bodnar about Mr. Perine.

20. On August 12, 2019, Mr. Fitzgibbons filed a grievance through his Union, Civil Service Employees Association ("CSEA"), Local 855, on the basis that his employer was not complying with the New York State workplace violence law by failing to file multiple reports of

violent incidents that occurred in his workplace with other County Departments, including Human Resources and the County Risk Assessor's office.

21.     On or about March 17, 2020, Mr. Fitzgibbons requested from Mr. Perine FMLA leave to care for his elderly mother during the COVID-19 pandemic. Mr. Perine refused to address Mr. Fitzgibbons' request, which ultimately had to be approved by the Commissioner Kip Kephart and Deputy Commissioner Bodnar of Tompkins County Department of Social Services.

22.     On May 22, 2020, the day Mr. Fitzgibbons returned from his FMLA approved leave and just days prior to receiving his Step 2 decision denying Plaintiff's workplace violence grievance, Mr. Perine notified him that his shift was being changed to a later shift from 7:30 am-3 pm to 8:30 am-4:30 pm.  Mr. Fitzgibbons had been working the earlier shift for at least a year and the early shift was preferable to him as the earlier shift required a shorter work day on the worksite.  Mr. Perine also has placed Mr. Fitzgibbons in more safety compromised positions at work against the recommendation of a security assessment in October 2019.

23.     On June 9, 2020, Mr. Fitzgibbons received the aforementioned Step 2 grievance decision from the County denying his workplace violence compliance grievance, which he had originally filed on August 12, 2019.

24.     The same day, on June 9, 2020, Mr. Fitzgibbons filed a grievance challenging the arbitrary and retaliatory nature of his shift change by Mr. Perine.  Mr. Fitzgibbons received a response from the County on October 29, 2020, denying his grievance, alleging that the shift change was made because of new measures required in response to the COVID-19 pandemic.

25.     Upon information and belief, neither of the younger security officers Tyler Mix and Jennifer Vichedomini had their shifts changed due to any special COVID-19 protocols.  This

shift change was contrary to the recommendations of an outside security assessment initiated by the County after Mr. Fitzgibbons filed the workplace safety grievance.

26. On multiple occasions throughout Mr. Fitzgibbons's employment with the County Department of Social Services, after speaking up to senior officials within the Department about security concerns, Mr. Fitzgibbons was intentionally excluded from security meetings and briefings. When Mr. Fitzgibbons asked a co-worker Tyler Mix in the summer of 2019 as to why he was not being told about these security meetings, Mr. Mix stated that the administrators holding the meetings would feel Mr. Fitzgibbons was "too old" and "they were not going to change [their] mind" regarding Mr. Fitzgibbons' safety concerns.

27. On July 21, 2020, Mr. Fitzgibbons filed a Public Employment Relations Board ("PERB") charge against Defendants alleging that he has been retaliated against because of the grievances he filed by the County placing him in more safety compromised positions at work and improperly changing his work hours.

28. On September 22, 2020, Commissioner Kephart advised Mr. Fitzgibbons in writing that he had been suspended with pay on administrative leave for an incident which had occurred on September 15, 2020, while he was dealing with an aggressive customer who was threatening him.  Mr. Fitzgibbons was told to leave his work location immediately. Upon information and belief, his younger coworkers who were also involved in the incident were not likewise suspended.

29. On October 7, 2020, Mr. Fitzgibbons appeared for his first PERB conference.

30. Only a few days later, on or about October 15, 2020, Mr. Fitzgibbons was served a Notice of Discipline including disciplinary specifications by Department of Social Services

6

Commissioner Kephart, seeking termination of his employment. This Notice of Discipline was based on the September 15, 2020 incident.

31. As a result, Mr. Fitzgibbons was suspended for 30 days on October 15, 2020 through November 15, 2020, and had his pay docked by the County without justification. He was the only security officer of those involved who was served with a Notice of Discipline and suspended without pay, as Mr. Mix did not receive any disciplinary notice for his involvement in the September 15, 2020 incident.

32. On October 26, 2020, Mr. Fitzgibbons dually filed an administrative complaint with the SDHR and EEOC based on age discrimination against Defendants, a copy which is annexed hereto. The SDHR agency did not process his complaint until December 18, 2020.

33. On Friday, December 9, 2020, Commissioner Kephart informed Mr. Fitzgibbons without notice, that he had to return to work on December 12, 2020.

34. On December 11, 2020, Mr. Fitzgibbons was injured off duty while snow blowing after a major snowstorm. He filed for, and was granted, a documented medical leave from December 11, 2020, going forward. On or about April 2020, the County's Human Resources Department ordered him to attend an evaluation by a County doctor, who ultimately approved his medical leave.

35. The County illegally docked Mr. Fitzgibbons' pay for approximately a week on or about December 11, 2020, when he did not immediately return and was out on a medical leave. Upon information and belief, Mr. Fitzgibbons has not had that leave time restored by the County to date.

36. Following the approval of his medical leave, Mr. Fitzgibbons was followed around and continues to be followed around by an insurance investigator retained, upon information and

belief, by the County to do so. Mr. Fitzgibbons has filed police reports with the New York State police about being followed around.

37. On December 22, 2020, shortly after Defendants became aware of the filing oof his protected SDHR/EEOC charge, Mr. Fitzgibbons was notified that the County would move to seek termination of his employment, and had selected an arbitrator for his disciplinary hearing regarding the September 15, 2020 customer incident. This disciplinary arbitration hearing was not held until July 6, 2021.

38. In an arbitration decision dated August 31, 2021, Arbitrator Ron Kowalski held that "[...] given his six years of service and only a prior warning as discipline over similar misconduct, just cause would not support termination as the appropriate discipline given the inherent principle of progressive discipline". Therefore, the arbitrator refused to terminate his employment against Defendants' wishes.

39. On April 9, 2021, Mr. Fitzgibbons decided to administratively withdraw from the SDHR and requested a right to sue letter from the EEOC. The EEOC issued him a right to sue letter, dated June 17, 2021, a copy which is annexed hereto as Exhibit A.

40. On or about June 15, 2021, the Tompkins County Sheriff's Department requested that he attend an interview alleging he defrauded the county. Mr. Fitzgibbons declined to attend the interview after consulting with counsel.

41. On or about July 15, 2021, Mr. Fitzgibbons filed a police report after noticing a car parked outside of his house. Upon information and belief, this was one of the many attempts by the County and its officials to further retaliate against him by interfering with his approved medical leave.

## FIRST CLAIM FOR RELIEF

### RETALIATION AGAINST PLAINTIFF FOR SPEAKING OUT ON MATTERS OF PUBLIC CONCERN IN VIOLATION OF HIS FIRST AMENDMENT RIGHTS

**(AGAINST ALL DEFENDANTS)**

42. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

43. While acting under the color of State Law, Defendants violated Plaintiff's First Amendment rights by retaliating against him based on his freedom of speech as a citizen regarding matters of public concern, specifically regarding the security and safety measures or lack thereof in the main concourse/entrance and screening area of the Tompkins County Department of Social Services building. Plaintiff reported this whistleblower speech and gave documents about workplace safety concerns to Commissioner Kephart directly during a meeting held on August 12, 2019, where the Commissioner, the Deputy Commissioner of DSS, two Deputy County Administrators, Human Resources personnel, and CSEA representatives were present, and failed to take action to address his concerns.

44. As a proximate result of Defendants' retaliation based on First Amendment speech, Defendants sought to falsely terminate Plaintiff's employment, and he has suffered both physical and emotional distress and anguish, in an amount to be determined at trial.

## SECOND CLAIM FOR RELIEF

### RETALIATION IN VIOLATION OF NEW YORK STATE CIVIL SERVICE LAW § 75 B
**(AGAINST ALL DEFENDANTS)**

45. Plaintiff repeats and realleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

46. Plaintiff reported improper governmental actions including violations of state law regarding workplace safety, and thereby engaged in a protected activity as defined in New York Civil Service Law § 75-b(2)(a), and was retaliated against for making such reports, up to and including the threatened termination of his employment.

## THIRD CLAIM FOR RELIEF

## AGE DISCRIMINATION AND RETALIATION UNDER THE ADEA

(AGAINST DEFENDANT COUNTY)

47. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

48. Defendants, through their aforementioned conduct have violated the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621-634, by discriminating against Plaintiff on the basis of his age and retaliating against him for filing a protected SDHR/EEOC complaint by seeking to terminate his employment. Defendants have discriminated against Plaintiff based on age by requiring Plaintiff to attend workplace training, moving the time of Plaintiff's shift, and intentionally excluding Plaintiff from security meetings and briefings, in contrast to his similarly situated younger colleagues.

49. Defendants have retaliated against Plaintiff by bringing him up on disciplinary charges seeking his termination of employment (unsuccessfully), shortly after he filed a protected SDHR/EEOC complaint of discrimination.

## FOURTH CLAIM FOR RELIEF

## FMLA INTERFERENCE AND RETALIATION

(AGAINST ALL DEFENDANTS)

50. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

51. Defendants through their aforementioned conduct have violated the Family and Medical Leave Act of 1993, 29 U.S.C. §§ 2601–2654 (2006), by discriminating against Plaintiff for having taken medical leave.

52. Defendants in retaliatory fashion have issued Plaintiff disciplinary summonses, and altered his work schedule, each time Plaintiff has returned from approved medical leave.

53. Additionally, during Plaintiff's most recent FMLA leave of absence, in an act of intimidation and harassment, Defendants continue to cause Plaintiff to be followed and spied upon by insurance fraud investigators to the present day.

## FIFTH CLAIM FOR RELIEF

## AGE DISCRIMINATION AND RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW

(AGAINST ALL DEFENDANTS)

54. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

55. Defendants through their aforementioned conduct have discriminated and retaliated against Plaintiff based on his age in violation of the New York State Human Rights Law.

### SIXTH CLAIM FOR RELIEF

### <u>GENDER-BASED RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW</u>

(AGAINST ALL DEFENDANTS)

56.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

57.     Defendants through their aforementioned conduct have retaliated against Plaintiff for reporting his direct supervisor Defendant Perine's gender-based sexual harassment misconduct towards coworkers in violation of the New York State Human Rights Law.

### SEVENTH CLAIM FOR RELIEF

### <u>DISABILITY DISCRIMINATION AND RETALIATION UNDER NEW YORK STATE HUMAN RIGHTS LAW</u>

(AGAINST ALL DEFENDANTS)

58.     Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

59.     Defendants through their aforementioned conduct have discriminated and retaliated against Plaintiff based on his disability in violation of the New York State Human Rights Law for spying on him while out on medical leave and changing his shift after returning from medical leave.

### <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by Jury

**PRAYER/DEMAND FOR RELIEF**

WHEREFORE, Plaintiff demands judgement in its favor against Defendants as follows:

a. Judgment declaring that Defendants acts violated Plaintiff's rights as secured by federal and state law prohibiting retaliation in employment.

b. Enjoining Defendants from any further acts adversely affecting the terms and conditions of Plaintiff's employment including his compensation and privileges;

c. Compensatory damages to compensate Plaintiff for economic loss, damage to name, profession, career and reputation, pain and suffering, emotional distress and mental anguish, embarrassment, indignity, and dislocation, in an amount to be determined at trial;

d. Punitive damages against one or all of Defendants;

e. Statutory attorneys' fees, interest, costs, and disbursements, and

f. For such other and further legal, equitable or other relief as the court deems just and proper.

DATED:   New York, New York
         September 15, 2021

                                    Law Offices of Andrea Moss
                                    187 Hollow Road
                                    Staatsburg, NY 12580
                                    (212) 242-6152

                                    By: *S/ Andrea M. Moss*
                                        ANDREA M. MOSS, ESQ.